IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-HC-2272-FL

| | |
|---|---|
| WILLIAM EARL ASKEW, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ERIK A. HOOKS, Secretary, N.C. Dep't ) | |
| of Public Safety, et al., ) | |
| ) | |
| Respondent.[1] ) | |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the court on respondents' motion for summary judgment (DE 22) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and in this posture are ripe for decision. For the reasons stated below, the court grants respondents' motion for summary judgment and dismisses the petition

## STATEMENT OF THE CASE

On October 29, 2012, the petitioner was charged in the Superior Court of Wake County in a three-count indictment with 1) trafficking by possession more than 28 grams of heroin, 2) trafficking by delivery more than 4 grams but less than 14 grams of heroin, and 3) conspiring to

---

[1] Petitioner named "Cynthia Thornton" as the respondent in this action. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed pursuant to 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Counsel for respondents represents that Erik A. Hooks, the Secretary of the North Carolina Department of Public Safety and unidentified parties designated "et al." are the proper respondents in this action. (See Mot. Summ J. (DE 22) at 1). The court has constructively amended the case caption to reflect the correct respondents in this action and will direct the clerk to so amend the caption on the docket.

deliver more than 4 grams but less than 14 grams of heroin. (Resp't App. Ex. 3 (DE 24-3) at 55).[2] On August 21, 2013, petitioner filed a motion to suppress in his underlying criminal case. (Id. at 15). On September 10, 2013, the state trial court convened a hearing on the motion to suppress, announced that the court denied the motion, and directed counsel to prepare an order reflecting that decision. (Id. at 45). That same day, petitioner pleaded guilty to the indictment on the condition that his right to appeal the denial of his motion to suppress be preserved, and the court sentenced petitioner to 225 to 279 months' imprisonment. (Id. at 31-36).

Petitioner appealed, seeking review of the order denying his motion to suppress. (Resp't App. Ex. 4 (DE 24-4) at 2-44). The North Carolina Court of Appeals affirmed petitioner's convictions and the trial court's order denying petitioner's motion to suppress. State v. Askew, No. COA14-411, 2015 WL 1201325, at *11 (Mar. 17, 2015). Thereafter, the North Carolina Supreme Court denied petitioner's request for discretionary review. State v. Askew, 368 N.C. 282 (2015).

On February 17, 2016, petitioner, proceeding pro se, filed a motion for appropriate relief ("MAR") in the Superior Court of Wake County. (Resp't App. Ex. 9 (DE 24-9) at 25-45). Without holding an evidentiary hearing, the court denied the MAR on April 7, 2016. (Id. at 49-53). On June 30, 2017, petitioner filed a "supplemental" MAR. (Id. at 54-65). On July 19, 2017, the court denied the "supplemental" MAR without holding an evidentiary hearing. (Id. at 79-81). Petitioner appealed, and the North Carolina Court of Appeals denied petitioner's petition for discretionary review on September 12, 2018. (Resp't App. Ex. 13 (DE 24-13) at 2-3). Petitioner

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

appealed to the Supreme Court of North Carolina, which dismissed the appeal on October 24, 2018. State v. Askew, 371 N.C. 570, 819 S.E.2d 384 (2018).

On November 7, 2018, petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging his state convictions should be vacated based on numerous constitutional violations that occurred during his state court proceedings. On May 31, 2019, this court ordered petitioner to file an amended petition. On July 8, 2019, petitioner filed his amended petition. On August 5, 2019, the court conducted its initial review of the petition, and allowed the matter to proceed. Respondent filed the instant motion for summary judgment on September 11, 2019, relying upon a memorandum of law, statement of materials facts, and appendix, including records from petitioner's state criminal proceedings at the trial and appellate levels. Petitioner responded in opposition, relying upon an opposing appendix, which consists of a subset of the records already submitted by respondents.

## STATEMENT OF FACTS

The facts and procedural history of petitioner's criminal proceedings have been summarized by the North Carolina Court of Appeals as follows:

> On 6 June 2012, defendant was riding as a passenger in a Kia Soul being driven by Tammy Pettiford. Sergeant Jeff Malzahn of the Raleigh Police Department ("RPD") stopped the vehicle, asked defendant to step out of the vehicle, and asked for defendant's identification. Defendant consented to Sergeant Malzahn's retrieving defendant's identification from his wallet, which was still in the car. In addition to opening the wallet to get defendant's identification, Sergeant Malzahn also checked a $100 bill in the wallet and determined that it was incriminating evidence of a controlled purchase of heroin, and he arrested defendant. Following defendant's arrest, defendant led officers to a stash of heroin.
>
> Defendant was indicted on 29 October 2012 for trafficking in heroin by possession, trafficking in heroin by delivery, and conspiring to deliver heroin. On 21 August 2013, defendant filed a motion to suppress arguing that Sergeant Malzahn's examination of the $100 bill exceeded the scope of defendant's consent to a search

of his wallet, and the bill was "not in plain sight." Defendant further sought to suppress any evidence seized following defendant's arrest as fruit of the poisonous tree. On 7 February 2014—after a hearing at which defendant presented no evidence—the trial court entered an order denying defendant's motion to suppress.

The trial court made the following findings of fact. In January or February 2012, RPD Detective Daniel Jones had come to suspect defendant and Jennifer Robertson of trafficking in heroin. RPD officers began maintaining surveillance on defendant and Ms. Robertson, including on their residences and vehicles. Ultimately, a confidential informant ("CI") agreed to participate in a controlled purchase of seven grams of heroin from defendant and Ms. Robertson at Ms. Robertson's residence on 6 June 2012.

On 6 June 2012, Detective Jones met with the CI and searched the CI and the CI's vehicle and found no contraband or money. Detective Jones equipped the CI with audio and video surveillance as well as $1,000.00 of RPD funds to make the purchase, including nine $100 bills and five $20 bills. Detective Jones had made photocopies of the bills and recorded the serial numbers for each bill. The CI telephoned Ms. Robertson and asked to buy seven grams of heroin. Ms. Robertson then called defendant whom the trial court found to be "her source" for heroin.

Defendant and Ms. Pettiford subsequently arrived at Ms. Robertson's house in the Kia Soul, and Ms. Robertson got into the back of the vehicle and made a phone call to the CI that was monitored. Ms. Robertson went back inside her residence, and the CI drove to meet Ms. Robertson. The CI went inside Ms. Robertson's house, completed the transaction, left the house, and met Detective Jones at a prearranged location to deliver to him the seven grams of heroin.

Ms. Robertson again left her residence, got into the back of the Kia Soul that was still parked in her driveway, and gave defendant the money from the drug transaction. Ms. Pettiford, Ms. Robertson, and defendant then drove in the Kia to a nearby Zaxby's Restaurant. Detective Jones began following the Kia hoping defendant would lead him to defendant's supplier. The Kia, however, returned to Ms. Robertson's residence, and after Ms. Robertson went back inside her residence, Ms. Pettiford and defendant went to a store where they stayed for a short time. Ms. Pettiford and defendant then went to defendant's residence and went inside. Shortly thereafter, Ms. Pettiford and defendant again drove away in the Kia.

About an hour or an hour and a half after the controlled purchase, it became clear that defendant was not going to contact his heroin supplier. Detective Jones requested over the radio that a patrol officer stop the Kia. While Detective Jones and others involved in the investigation were in plain clothes and driving unmarked RPD vehicles, Sergeant Malzahn was in uniform and driving a marked patrol car nearby.

Detective Jones, who was parked a short distance from where Sergeant Malzahn was located, asked Sergeant Malzahn to stop the Kia Soul. After pulling the Kia over, Sergeant Malzahn spoke with Ms. Pettiford and then returned to his patrol car. Detective Jones was able to maintain surveillance of the encounter. Sergeant Malzahn discovered that Ms. Pettiford had a revoked North Carolina driver's license and observed that defendant was acting "extremely nervous while speaking with him." After Sergeant Malzahn relayed this information to Detective Jones, Detective Jones advised Sergeant Malzahn to try to obtain consent to search the vehicle and "to specifically look for $100 bills and to obtain the serial numbers if possible." Sergeant Malzahn returned to the Kia and asked Ms. Pettiford and defendant for identification. Defendant told Sergeant Malzahn that his identification was in his wallet, which was located in defendant's suitcase in the back of the vehicle.

Sergeant Malzahn asked Ms. Pettiford and defendant to step out of the vehicle, and he "obtained limited consent to retrieve [defendant's] wallet for the ID." After defendant and Ms. Pettiford complied, Sergeant Malzahn opened defendant's suitcase and retrieved defendant's wallet, "a billfold, which opened horizontally, with a pocket that runs the length of the billfold." The trial court found that "as [Sergeant Malzahn] opened the wallet, he could see a $100 bill partially sticking out of the pocket that runs the length of the billfold[.]" Then, Sergeant Malzahn "open[ed] the wallet slightly, and partially removed the $100 bill to write down the serial number. He was also able to retrieve Askew's identification from the billfold[.]" After returning to his patrol car, Sergeant Malzahn read the serial number to Detective Jones, who confirmed that the bill was used in the controlled purchase.

Detectives then arrested both Ms. Robertson and defendant for trafficking heroin. Subsequent to his arrest, defendant admitted that he had more heroin at Ms. Pettiford's home. Officers in fact found a large amount of heroin when they searched Ms. Pettiford's home.

Based on those findings of fact, the trial court made the following conclusions of law:

> 1. Sgt. [Malzahn] had reasonable suspicion to stop the vehicle. In reviewing the totality of the circumstances, Detective Jones "possessed a reasonable suspicion that criminal conduct had occurred, was occurring or was about to occur." State v. Battle, 109 N.C. App. 367 (1993). Detective Jones possessed that reasonable suspicion prior to his request that Sgt. [Malzahn] stop Askew's vehicle. Id.

5

> 2. Sgt. [Malzahn]'s search of Askew's wallet did not exceed the consent given. Askew gave Sgt. [Malzahn] consent to search the wallet for his identification. Sgt. [Malzahn] understood this to mean that he had limited consent to search the wallet and retrieve Askew's ID. Sgt. [Malzahn] followed that limited consent by opening the wallet and when he saw the $100 bill that was partially sticking out of the billfold, he recorded the serial number.
>
> 3. The stop of the vehicle and subsequent search of the wallet do not violate the Defendants [sic] rights protected by the Fourth Amendment of the United States Constitution.

Askew, 2015 WL 1201325, at *1-3. Based on the foregoing reasoning, the state trial court denied the motion to suppress. Id.

Additionally, prior to the court entering its order denying the motion to suppress, the assistant district attorney requested that the trial court delay its entry of the order because the State had received information regarding possible discoverable information pursuant to Giglio v. United States, 405 U.S. 150 (1972). (Resp't App. Ex. 3 (DE 24-3) at 45). The court delayed entry of its final order denying the motion to suppress and performed an in camera review of the materials submitted by the assistant district attorney. (Id.). The court found "as a matter of law that the materials [were] particularly sensitive and consist[ed] of confidential personnel records of detective Marbry of the Raleigh Police Department. The materials reviewed contain[ed] no information related to [petitioner], the testifying co-defendant, or this investigation. The records reviewed are not material to this investigation." (Id.). The court then ordered that the materials be sealed and maintained in the court record. (Id. at 46). On February 7, 2014, the order denying the motion to suppress was filed. (Id. at 29).

6

Case 5:18-hc-02272-FL    Document 32    Filed 09/11/20    Page 6 of 17

**DISCUSSION**

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct on federal habeas review, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Congress intended the standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to be difficult to meet. See White, 134 S. Ct. at 1702 (2014); Harrington, 562 U.S. at 102. "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 103. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 784; see DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

B.  Analysis

Petitioner raises the following claims for relief in the instant petition: 1) prosecutorial misconduct, asserting that the state failed to disclose Detective Marbry's personnel records under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972); 2)

8

ineffective assistance of counsel, asserting his trial attorney failed to file a motion to suppress on the ground that petitioner was questioned before officers read him his Miranda rights; and 3) the state post-conviction court erred and/or abused its discretion, contending it failed to order a post-conviction evidentiary hearing to properly adjudicate the MAR.

    1.    Prosecutorial Misconduct

In his first claim, petitioner alleges that the state engaged in prosecutorial misconduct when it failed to disclose Detective Marbry's personnel records. Petitioner raised this claim before the Wake County Superior Court ("MAR court") in the first MAR, which rejected the argument on the following basis:

> The errors asserted by [petitioner] in his Motion for Appropriate Relief, specifically those facts which [petitioner] asserts amounts to "prosecutorial misconduct," were all known to him at the time of his appeal to the Court of Appeals. [Petitioner] has previously appealed these convictions to the North Carolina Court of Appeals and he was, as that time, in a position to adequately raise grounds or issues underlying the present motion. The Court finds that there is no good cause excusing the failure to raise the issues on appeal. Moreover, the Court does not find that the failure to consider the [petitioner's] claim by the Court at this time will result in a fundamental miscarriage of justice. Hence, pursuant to N.C. Gen. Stat. 15A-1419, the [petitioner's] motion for appropriate relief is subject to denial.

(Resp't App. Ex. 9 (DE 24-9) at 2).

Pursuant to N.C. Gen. Stat. § 15A-1419(a)(3), a court may deny an MAR if, "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." Section 15A–1419 is an independent and adequate state procedural bar, precluding federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008). Petitioner has not demonstrated cause or prejudice or a fundamental miscarriage of justice to overcome the procedural default. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998) (finding that a habeas court will not review a claim that is procedurally defaulted absent

9

a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim). Because petitioner failed to preserve his claims under North Carolina law, they are procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Therefore, petitioner's procedural default bars habeas review of claim one.

Alternatively, petitioner's claim also fails on the merits. In order to establish a claim for prosecutorial misconduct, a petitioner must demonstrate: "(1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (citing United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999)).

After receiving notice from the assistant district attorney that she had received collateral information that might have been discoverable pursuant to Giglio, the state trial court delayed entry of its order to perform an in camera review. (Resp't App. Ex. 3 (DE 24-3) at 45). The court found that "the materials [were] particularly sensitive and consist[ed] of confidential personnel records of detective Marbry of the Raleigh Police Department" and that "[t]he materials reviewed contain[ed] no information related to this [petitioner], the testifying co-defendant, or this investigation." (Id.). The court further concluded that "[t]he records reviewed [were] not material to this investigation" and the state acted in good faith. (Id. at 45-46). Further the court stated that when it denied the motion to suppress, the only evidence the court considered was "the testimony of Detective Jones, Sergeant Malzhan, and Jennifer Robertson, as well as statements of counsel." (Id. at 26, 45-46).

The assistant district attorney's conduct in notifying the court of possible discoverable material was not improper, and in fact, she took steps to ensure that petitioner's rights were

10

protected when she requested a delay for the court to review the documents. Further, petitioner has not shown that he was prejudiced or deprived of a fair trial. He had already pleaded guilty to the indictment, and the court limited its consideration of the evidence only relying on the "testimony of Detective Jones, Sergeant Malzhan, and Jennifer Robertson, as well as statements of counsel." (Id.).

To the extent petitioner is asserting a claim for violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, the claim is procedurally defaulted for the reasons set forth above. The claim also fails on the merits. Brady holds that prosecutors violate the Due Process Clause when evidence that is favorable to the defendant and material to either guilt or to punishment is not disclosed to the defendant. Brady, 373 U.S. at 87; Stricker v. Greene, 527 U.S. 263, 280 (1999). As noted by respondent, the prosecutor complied with her disclosure requirements under Brady by tendering Marbry's confidential personnel files to the court for in camera inspection prior to entering the final order on the motion to suppress. See Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987). The state court found the information was irrelevant to the suppression ruling. (See Resp't App. Ex. 3 (DE 24-3) at 45). Petitioner fails to establish that the state court's materiality ruling was clearly erroneous, and thus no Brady violation occurred on these facts. See United States v. Trevino, 89 F.3d 187, 189-90 (4th Cir. 1996) (stating standard). Petitioner also fails to address the North Carolina Court of Appeals' determination that Malzahn's search was justified under the plain view doctrine, thus negating any need to address Marbry's alleged credibility issues. See Richardson v. Branker, 668 F.3d 128, 145 (4th Cir. 2012) (explaining "evidence is 'material' if there is a reasonable probability that the proceeding would have resulted in a different outcome had the evidence been disclosed to the defense").

11

Accordingly, for the reasons stated above, the MAR court's adjudication of these claims was not contrary to or an unreasonable application of clearly established federal law, and the court grants respondents' motion for summary judgment as to these claims.

2.  Ineffective Assistance of Counsel

In his second claim, petitioner alleges that his trial counsel was ineffective for failing to file a motion to suppress on the ground that petitioner was questioned before officers read him his Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner raised the substance of claim two in the "supplemental" MAR. Like claim one, the MAR court denied relief because at the time of his previous appeal and MAR, petitioner was in a position to adequately raise the issue and found there was no good cause excusing the failure. (Id. at 80). Thus, the MAR court denied the motion pursuant N.C. Gen. Stat. § 15A-1419. (Id.).

For the reasons stated above, N.C. Gen. Stat. § 15A-1419 is an independent and adequate state procedural bar, thus precluding federal habeas review of this defaulted claim. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner also fails to establish cause and prejudice or a miscarriage of justice adequate to excuse the procedural default.³ Claim two therefore is dismissed as procedurally defaulted.

Claim two also fails on the merits. In order to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. See Strickland v. Washington, 466 U.S. 688, 687 (1984). Under the first prong, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. The court must be "highly deferential" to

---

3   For the reasons discussed below in connection with the merits of the claim, petitioner has failed to establish a substantial claim of ineffective assistance of trial counsel sufficient to overcome the procedural default under Martinez v. Ryan, 566 U.S. 1 (2012) or Trevino v. Thaler, 569 U.S. 413 (2013). See Owens v. Stirling, 967 F.3d 396, 422-23 (4th Cir. 2020); Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014).

12

counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The second prong requires a petitioner to prove that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Ineffective assistance of counsel claims are extremely difficult to establish in the context of a § 2254 petition. Specifically, the Supreme Court has stated that, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (quotation and citation omitted).

Petitioner alleges that he was questioned by Detective Jones and that Jones told him "he was facing a lot of time and that at [petitioner's] age, 'he might die in prison,' and that he needed to think about giving Jones some information for help himself and his friend Tammy Pettiford 'because she will be going down with him.'" (Pet'r's Resp. (DE 27) at 12-13). Petitioner then alleges that because of Jones's statements, he was induced to provide the location of heroin he had hidden in Pettiford's apartment to protect himself and Pettiford. (Id. at 13). Petitioner claims that his attorney should have file a motion to suppress his statements because he was questioned without being Mirandized.

13

However, it is apparent from the evidentiary hearing on petitioner's motion to suppress that he initiated the disputed conversations with Sergeant Malzhan and Jones. At the hearing, Malzhan testified as follows:

> A. [Sgt. Malzhan] Yes. I was basically – I think there was two of us there. One was watching Ms. Pettiford. One was watching Mr. Askew. And I was basically sitting at a table. He was handcuffed to a bench in the hallway. He called me over to him on two different occasions and made statements to me where I had to physically get up and walk over to him. Because of the things that he wanted to tell me.
>
> Q. And it was about the large amount of heroin that was at the house that belonged to him?
>
> A. Yes. He told me that he wanted me to tell Detective Marbry that he knew that he was going to Ms. Pettiford's. That he had stayed there last night as a matter of convenience due to his car accident. And that she had nothing to do with what they would find. He stated that he had heroin there and that she had no knowledge of it. She had no involvement. And it was just a circumstance that he had been in a car accident and spent the night at her house.

(Resp't App. Ex. 16 (DE 24-16) at 66:1-18). Petitioner presented no evidence at the hearing. (See id. at 67:1-6).

Because petitioner initiated the conversations in which he gave incriminating statements, Miranda does not protect his statements. See United States v. Rhodes, 779 F.2d 1019, 1032 (4th Cir.1985) ("Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."); see also Colorado v. Connelly, 479 U.S. 157, 170 (1986) ("Miranda protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that [and does not extend to defendant's unfounded] perception of coercion."). Therefore, petitioner's argument that he should have been Mirandized prior to his statements is meritless, and his attorney did not act unreasonably in failing to raise a meritless

14

argument in the motion to suppress. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir.2005) ("Counsel is not required to engage in the filing of futile motions." (citation omitted)).

Based on the foregoing, the MAR court's adjudications of petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law, and it is procedurally barred. The court therefore grants respondents' motion for summary judgment as to these claims.

> 3. Trial Court Abuse of Discretion

The court next turns to claim three of the petition. Petitioner alleges that the "trial court erred and/or abuse[d] its discretion by failing to order an evidentiary hearing to properly adjudicate on the merits [petitioner's] [ineffective assistance of counsel] claims." Pet. at 9. Although petitioner states his allegation is against the trial court, it is apparent from the petition and petitioner's response in opposition to respondents' motion for summary judgment that petitioner actually meant to bring the allegation against the MAR court. (See Pet. 13-14; Resp. Mot. Summ. J. at 10-11; Pet'r's Reply at 21-23).

Claim three fails to provide a cognizable basis for habeas relief. Pursuant to § 2254, a petitioner may obtain relief from a state court judgment only on the ground that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "A state prisoner has no federal constitutional right to post-conviction proceedings in state court." Lawrence, 517 F.3d at 718 (citing Lackawanna Cnty. Dist. Att'y v. Cross, 532 U.S. 394, 402 (2001) (noting "each State has created mechanisms for both direct appeal and state postconviction review . . . even though there is no constitutional mandate that they do so")). "Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas

relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." Id. (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir.1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief.")).

Because petitioner's claim that the MAR court erred by not conducting an evidentiary hearing relates only to the MAR courts adjudication of his state post-conviction motion, it cannot serve as a basis for federal habeas relief. Accordingly, petitioner's third claim fails, and the court grants respondents' motion for summary judgment as the claim three.

C.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondents are entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason

16

would find it debatable whether the petition [or motion] states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

## CONCLUSION

Based on the foregoing, the court GRANTS respondents' motion for summary judgment (DE 22), and DISMISSES the petition. A certificate of appealability is DENIED. The clerk is DIRECTED to close this case, and to amend the caption as set forth in footnote one.

SO ORDERED, this the 11th day of September, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge

17

Case 5:18-hc-02272-FL   Document 32   Filed 09/11/20   Page 17 of 17